No. 13-16014

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAWRENCE CRILLEY, ET AL.

APPELLANTS

*v.*

BANK OF AMERICA, N.A., ET AL.

APPELLEES

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I*

*Case No. 12-cv-00081 LEK-BMK
The Honorable Leslie E. Kobayashi
United States District Judge*

**APPELLANTS' REPLY BRIEF;
CERTIFICATE OF COMPLIANCE;
CERTIFICATE OF SERVICE**

IVEY FOSBINDER FOSBINDER LLLC
A LIMITED LIABILITY LAW COMPANY

JAMES HARRY FOSBINDER
*Attorney for the Appellants
1883 Mill Street
Wailuku, Hawai'i 96793
(808) 242-4956*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................... 2

ARGUMENTS IN REPLY ........................................................................................... 3

   A.   Appellees' Legal Conclusions Regarding Servicer Duty Fails to Account for the Special Circumstances Characterizing the Servicer/Borrower Relationship. .......................................... 3

   B.   Appellees Engaged In Outrageous Conduct In Violation Of The UDAP, And Benefited From Their Misrepresentations Made To Appellants. ............................................... 6

CONCLUSION ............................................................................................................ 10

CERTIFICATE OF COMPLIANCE ........................................................................... 11

CERTIFICATE OF SERVICE .................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Ansanelli v. JP Morgan Chase Bank, N.A., et al.*, U.S. Dist. LEXIS 32350, WL 1134451 (N.D. Cal. Mar. 28, 2011) .................................................................................................................. 6
*Becker v. Wells Fargo Bank, N.A. et al*, U.S. Dist. LEXIS 84028 (E.D. Cal.; Aug. 1, 2011) ........ 7
*Cadle Co. v. Hayes*, 116 F.3d 957, 961 n.5 (1st Cir. 1997) .............................................................. 5
*Garcia v. Ocwen Loan Servicing*, 2010 U.S. Dist. LEXIS 45375 (N.D. Cal. May 26, 2010) ........ 6
*Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 153 Cal. Rptr. 3d 546, 2013 Cal. App. LEXIS 107, 2013 WL 494022 (Cal. App. 1st Dist. 2013) ................................................. 7
*McDonald v. Antelope Valley Community College Dist.*(2008) 45 Cal.4th 88, 96–97 [84 Cal. Rptr. 3d 734, 194 P.3d 1026]. ................................................................................................... 5
*Mid-Cal Nat. Bank v. Federal Reserve Bank of San Francisco*, 590 F.2d 761, (9th Cir. 1979) .... 4
*Robinson v. Bank of America* (N.D.Cal., May 29, 2012, No. 12-CV-00494-RMW) 2012 U.S.Dist. Lexis 74212 .................................................................................................................. 6
*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) ................... 8
*Taylor-Rice v. State*, 91 Hawai'i 60, 69-70, 979 P.2d 1086, 1095-96 (1999) ................................. 4
*Watkinson v. Mortgage IT, Inc.* (S.D.Cal., June 1, 2010, No. 10-CV-327-IEG (BLM)) 2010 U.S.Dist. Lexis 53540 ................................................................................................................ 6

**Statutes**

HRS § 480-2 ................................................................................................................................ 3, 10
HRS §480-2 ...................................................................................................................................... 6

**Other Authorities**

*Problems in Mortgage Servicing From Modification to Foreclosure*: *Hearing Before the S. Comm. On Banking, Housing, & Urban Affairs*, 111th Cong., at 3 (Nov. 16, 2010) (written testimony of Diane E. Thompson, National Consumer Law Center). ........................................ 9
*Why Servicers Foreclose When They Should Modify and Other Puzzles of Servicer Behavior*, Dianne E. Thompson, Nat'l Consumer Law Ctr., vi (2009). ...................................................... 8

Appellants Lawrence Crilley and Marcy Koltun-Crilley ("Mr. Crilley" "Mrs. Crilley" or collectively "Appellants") hereby submit their reply brief in response to Appellee's Answering Brief submitted by Bank of America, N.A. and BAC Home Loans Servicing, LP ("**BANA or BAC Servicing**") (collectively referred to herein as "*Appellees*") in Appellants appeal from a judgment of the United States District Court for the District of Hawaii following an order granting motion for summary judgment filed by Appellees.

## **INTRODUCTION**

The arguments of Appellees are premised on the fact that the banks do not owe any duties to borrowers that are sufficient to maintain a claim for negligence in the loan modification context. (Answering Brief, 14)

Appellees fail to understand that this case does not involve the traditional lending activity but, rather, involve the special relationship and specific activity Appellees undertook when they solicited Appellants to participate in a loan modification, and advising Appellants to restrain from mortgage payments with the intention of keeping Appellants' loan in default for as long as possible in order to maximize its fees and the payments it is able to extract from Plaintiff (ER 18).

The issues on appeal remain. Did the District Court err in finding that there was no breach of duty in negligence and no causation and that Appellants' did not suffer and could not have suffered any actual damages as a matter of law, and that Appellees did not make any actionable misrepresentations to Appellants in regard to their loan modification efforts, sufficient to raise a triable issue of fact as to a violation of UDAP.

At the very least, the question of fact exists regarding whether Appellees breached their duty when making false promises to Appellants, deceiving Appellants into believing that they would get a loan modification in order to keep their loan in default to maximize its own fees and whether Appellants demonstrated that they suffered damage relating to the loan modification process as to a violation of UDAP.

The record viewed in its entirety, when considered in light of the unique circumstances characterizing the servicer/borrower relationship, shows that conduct by

Appellees was negligent, and violated HRS § 480-2 as an unfair and deceptive trade practice and caused damages.

## ARGUMENTS IN REPLY

**A.    Appellees' Legal Conclusions Regarding Servicer Duty Fails to Account for the Special Circumstances Characterizing the Servicer/Borrower Relationship.**

When considered in light of the unique circumstances of this case, Appellees owed a duty to Appellants and Appellants demonstrated sufficient facts to show that Appellee owed them a duty of care in processing their multiple loan modification application (ER 9) and breached the duty by failing to timely provide them with promised loan modification agreement and once agreement was provided to them it was in error (ER 10). Moreover, Appellees instructions to restrain from making mortgage payments in order to get a loan modification caused Appellants a significant damage to their credit score, made it difficult for Appellants to ever cure the default and caused the accumulation of fees and costs (ER 11).

Although, the duty was assumed in regards to Appellees' obligation to "timely process and provide Appellants with a loan modification"(ER 15-16), without a clear statement of the duty owed to Appellants, the District Court could not properly determine the elements of breach and causation

Appellees construct an argument as to the no duty rule in negligence, which effectively insulates loan servicers from owing a duty to borrowers so long as the loan servicer is acting within an overly broad definition of "usual" loan servicer functions.

Appellees baldly apply this legal principal to the lender/borrower context and assert the narrow legal conclusion that absent special circumstances a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender (AB, 26-37).

3

The particular facts alleged in Appellants' pleadings and supporting documents clearly show that Appellees acted outside of its role as a mere lender of money. Appellees actively engaged Appellants in the loan modification process by requesting detailed financial information, counseling them to remain delinquent on their mortgage payments, providing them with negotiator and establishing a relationship with Appellants in which Appellants had very little autonomy (ER 113, 125-127, 144, 147, 148, 154).

There are clearly special factors that characterize the relationship between Appellants and Appellees as one in which Appellees were acting beyond that of a mere lender of money or silent loan servicer.

In *Mid-Cal Nat. Bank v. Federal Reserve Bank of San Francisco*, 590 F.2d 761, (9th Cir. 1979) the Court has determined that "a person who undertakes an activity owes a duty to others to exercise ordinary care or skill.".

Moreover, "absent uncontroverted evidence from which only one inference can reasonably be drawn, the questions of breach of duty and legal causation constitute questions of fact, reviewable on appeal only for clear error." See *Taylor-Rice v. State*, 91 Hawai'i 60, 69-70, 979 P.2d 1086, 1095-96 (1999); *Knodle*, 69 Haw. at 387-89, 742 P.2d at 384-85.

By contrast to the conventional relationship, Appellant had no choice but to rely on Appellees false promises and work with Appellees in an attempt to obtain a loan modification. Appellant was forced to rely solely on the representations made by Appellees and to comply with every demand made by Appellees, who, at all times throughout the loan modification application process, maintained unilateral authority. As clearly argued in Appellants' Opening Brief, Appellees maintained control over the loan modification process;

4

made numerous misrepresentations to Appellants about the status of their loan modifications, while simultaneously counseling them to remain delinquent on their mortgage payments.

Contrary to Appellees' contention, Appellants' presented a triable issue of facts that precluded summary judgment, and should allow the issue of breach, causation and damages to be referred to a jury for consideration. Even a clearly self-serving affidavit constitutes evidence which the court must consider when resolving summary judgment motions. See *Cadle Co. v. Hayes*, 116 F.3d 957, 961 n.5 (1st Cir. 1997) ("A party's own affidavit, containing relevant information of which he has first knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment").

Moreover, all the interferences should be viewed in the light most favorable to the non-moving party. "We must "view the evidence in the light most favorable to plaintiff[] as the losing part[y]" and "liberally construe plaintiff['s] evidentiary submissions and strictly scrutinize defendant['s] own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff['s] favor." *McDonald v. Antelope Valley Community College Dist.*(2008) 45 Cal.4th 88, 96–97 [84 Cal. Rptr. 3d 734, 194 P.3d 1026].

Courts in many other States have found "active participation" by a loan servicer sufficient to give rise to a duty on the part of the loan servicer and recognize that offering a loan modification agreement to a borrower like in this case. *Ansanelli v. JP Morgan Chase Bank, N.A., et al.*, U.S. Dist. LEXIS 32350, WL 1134451 (N.D. Cal. Mar. 28, 2011); *Garcia v. Ocwen Loan Servicing*, 2010 U.S. Dist. LEXIS 45375 (N.D. Cal. May 26, 2010). Similarly, in *Robinson v. Bank of America* (N.D.Cal., May 29, 2012, No. 12-CV-00494-RMW) 2012 U.S.Dist. Lexis 74212, the court decided on a motion to dismiss which held that a bank went beyond its role as a "silent" lender in its dealings with the plaintiff during loan

5

modification negotiations. There, the bank was "alleged to have executed and breached the modification agreement, then engaged in a series of contradictory and somewhat misleading communications with plaintiff—in person, in writing, and by phone—regarding the status of his loan. Under such circumstances, it was entirely foreseeable that [the bank's] conduct could result in damage to plaintiff's credit rating or a decrease in the value of his home." See also *Watkinson v. Mortgage IT, Inc.* (S.D.Cal., June 1, 2010, No. 10-CV-327-IEG (BLM)) 2010 U.S.Dist. Lexis 53540, duty of care found where the bank knowingly misstated borrower's income and value of property on the loan application, and where borrower sought but was denied a loan modification; See also *Becker v. Wells Fargo Bank, N.A. et al*, U.S. Dist. LEXIS 84028 (E.D. Cal.; Aug. 1, 2011). Affirming Magistrate Judge's leave to amend premised upon "a duty that may have been triggered based upon defendants' actions or representations during the loan modification application process.").

Appellants cite broadly to Jolley because, likewise in Jolley, appellant believes that the "existing state statutes relating to loan modification will soon be supplemented by stiffer restrictions on the conduct of lenders and loan servicers during the loan modification process". Jolley v. Chase Home Finance, LLC, 213 Cal. App. 4th 872, 153 Cal. Rptr. 3d 546, 2013 Cal. App. LEXIS 107, 2013 WL 494022 (Cal. App. 1st Dist. 2013).

**B.     Appellees Engaged In Outrageous Conduct In Violation Of The UDAP, And Benefited From Their Misrepresentations Made To Appellants.**

The District Court erred in applying substantive law of HRS §480-2 when finding that Appellants allegation of Appellees conduct did not rise to the level of unfair or deceptive acts.

6

The record in the present matter contains evidence of the circumstances surrounding Appellants' loan modification efforts. Appellants precisely alleged misrepresentations that were made by Appellee, what exactly was promised to Appellants, whether any of the alleged statements were in writing, and demonstrated facts showing that they suffered loss and damage as a result of Appellee's acts and omissions (ER 11, 12, 125-130).

Appellees' conclusions that Appellees conduct was not unfair and deceptive are clearly contradicted by the record.

Appellants raised a genuine issue of material fact as to whether Appellee negotiated the loan modification with Appellants in a deceptive manner, and in particular, whether the alleged misrepresentations during the loan modification process of the promised modification agreement, caused Appellants as a natural and probable result, to believe that their loan will be modified and, therefore, to do that which they would not otherwise do, wait for a very decent modification agreement instead of selling their house (ER 125-130).

To the extent that UDAP sounds in fraud, as the Appellees' contend, Appellants have stated with particularity the circumstances constituting fraud. Appellants' have alleged the specific times, and substance of the fraudulent representations and, on most occasions provided the name of the actual BANA agent with whom Appellants spoke, as often required. See *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1042 (9th Cir. 2010).

Contrary to Appellees' allegations, Appellants have presented sufficient evidence that BANA made a series of misrepresentations, which involved important information necessary for Appellants to make an informed determination about how to proceed with alternate

7

foreclosure-avoidance options including the in-house modification offers that were subsequently presented to them.

Appellees should not be allowed to make misrepresentations as to Appellants' loan modification (ER 113, 115, 117, 125, 144, 147, 154) and false promises as to Appellants' HAMP trial period plan (ER 112-115, 125) and prolonging the decision on a loan modification application to generate additional interest and fees (ER 18).

Appellants has alleged that, as a part of Appellees' scheme of prolonging the, process, misrepresentations were made that were intended to and indisputably did induce Appellants.

Like other loan servicers, Appellee has a strong incentive to unfairly protract modification proceedings with borrowers as a means of maximizing its profits. Servicers have four main sources of income, listed in descending order of importance: (i) the monthly servicing fee, a fixed percentage of the unpaid principal balance of the loans in the pool; (ii) fees charged borrowers in default, including late fees and "process management fees"; (iii) float income, or interest income from the time between when the servicer collects the payment from the borrower and when it turns the payment over to the mortgage owner; and (iv) income from investment interests in the pool of mortgage loans that the servicer is servicing. Dianne E. Thompson, *Why Servicers Foreclose When They Should Modify and Other Puzzles of Servicer Behavior*, Nat'l Consumer Law Ctr., vi (2009).

These sources of income give servicers very little incentive to offer sustainable loan modifications and more of an incentive to counsel borrowers to become delinquent, protract the modification process and ultimately push loans into foreclosure.

The monthly fee that servicers receive based on a percentage of the outstanding principal of the loans in the pool provides incentive to servicers to keep loans in the pool

rather than immediately foreclosing on them, but also provides a significant disincentive to offer principal reductions or other loan modification that are sustainable in the long term. In fact, this fee provides servicers with the incentive to increase the loan principal by adding delinquent amounts and miscellaneous "junk" fees. The servicers receive a higher monthly fee for a while, before the loan ultimately fails. Fees that servicers charge borrowers in default reward servicers for getting and keeping a borrower in default. As they grow, these fees make a modification less and less feasible.

Central to the failure of servicers' loan modification programs, arbitrary and deceptive roadblocks are erected by servicers to prevent modifications from proceeding to a permanent status. Dianne E. Thompson, *Problems in Mortgage Servicing From Modification to Foreclosure*: *Hearing Before the S. Comm. On Banking, Housing, & Urban Affairs*, 111th Cong., at 3 (Nov. 16, 2010).

Borrowers, including Appellants, are asked to resubmit the same documents numerous times, despite being told just days prior, that all required documentation and information necessary to process the loan modification has been received by Lender. This demonstrates either a systemic negligence in Appellees' recordkeeping practices, or Appellees' unfair abuse of its authority in the loan modification process (or both). Servicers, like Appellees, counsel borrowers to become delinquent on their mortgage payments as a prerequisite for qualifying for loan modification. This justifies the assessment of late charges and other fees to borrower's account, while the servicer misleads the borrower into believing that he or she will obtain a permanent loan modification and that their loan will resume to normal servicing. Id. at 11.

Foreclosure-related fees accrued during protracted modification processes significantly increase servicer profits when they eventually foreclose, because servicers get to take the accrued fees – including, *inter alia*, fees for property inspections, purported attorneys' fees and costs, and late fees – off the top of the foreclosure proceeds before investors get their share. *Id*. at 19-36.

Appellants' UDAP claim is based on the series of specific facts detailing Appellees systematic pattern of fraudulent misrepresentations designed to delay Appellants' loan modification applications. Such conduct is properly found to be unethical, oppressive, unscrupulous and substantially injurious to Appellants, thus violating HRS § 480-2 as an unfair and deceptive trade practice.

## CONCLUSION

Based on all of the foregoing, this Court should reverse Appellees' Motion for Summary Judgment and remand this cause of action to the District Court for further proceedings.

DATED:  February 10, 2014

                IVEY FOSBINDER FOSBINDER LLLC
                A LIMITED LIABILITY LAW COMPANY

                /s/ *James H. Fosbinder*
                JAMES H. FOSBINDER,
                Attorney for Appellants

## **CERTIFICATE OF COMPLIANCE**

I certify as follows:

      1. This Appellant's Reply Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,448 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

      2. This Appellant's Reply Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point Times New Roman.

      3. In preparing this Certificate, I have relied on the word count of Microsoft Office Word 2010, the word-processing system used to prepare this Appellant's Reply Brief.

DATED: February 10, 2014.

                                            IVEY FOSBINDER FOSBINDER LLLC
                                            A LIMITED LIABILITY LAW COMPANY

                                            /s/ *James H. Fosbinder*_____
                                            JAMES H. FOSBINDER,
                                            Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that, on February 4, 2014, I electronically filed this Appellant's Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF System.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF System.

DATED:  February 10, 2014.

>IVEY FOSBINDER FOSBINDER LLLC
>A LIMITED LIABILITY LAW COMPANY
>
>/s/ *James H. Fosbinder*
>JAMES H. FOSBINDER,
>Attorney for Appellants